You're a step ahead of me. That way it wouldn't have been a distraction for the first four, right? Mr. Johnson, can you hear me and see me? Yes, I can. Very good. We can hear and see you as well. I'm going to go ahead and call the case. Perhaps we get Mr. Johnson's volume up just a bit, if that's possible. The court calls appeal 24-3325, Maureen Fox et al. v. DuPage Township et al. Mr. Johnson, let me recognize you for argument on behalf of the appellant. Okay. You may commence. Pardon? You may commence. Oh, okay. Your Honor, the district court judgment states plaintiff did not establish a prima facie case of political retaliation. Reorganization could be a consideration likely to deter such activity in the future. Plaintiffs must prove that productive first amendment activity was at least a motivating factor in defendant's decision to take retaliatory action. Causation can be proved through circumstantial evidence. In our plaintiff's reply brief, states that reorganization of the township was a ruse or a scam to terminate plaintiffs. No one but Supervisor Marshy knew plaintiffs were being fired. Plaintiffs termination were not approved or presented to the DuPage Township Board. Mr. Johnson, let me ask you a question on the step one of the burden shifting that goes on in this type of retaliation claim. Suspicious timing can certainly be part of the plaintiff's case. And there is evidence of suspicious timing here. But in addition, there has to be circumstantial or direct evidence. Here, it appears you're offering some version of circumstantial evidence. What is your best argument to get past this first step? Well, the best argument is the Supervisor Marshy did not tell anybody that the plaintiffs were going to be fired until they were fired. He did so without consulting the Township Board. He did it on his own authority, I suppose. The timing is suspicious because it was the first board meeting after he was elected. And the plaintiffs had campaigned for opposing opponents for both the Bayer Boeing Group of Physicians and the Township Physicians. Are there facts, Mr. Johnson, that Mr. Marshky knew about your client's political affiliations? He wouldn't admit it, but he was at frequent meetings of the township center for retired people. They had trips and dinners and stuff for the retired people. One of my clients was in charge of that, and the other client was in charge of public relations and things. And Marshky had to know, because of their history, they were employed 17 to 21 years with Township, and Township Supervisor was always a Republican. Well, you say that Marshky had to know. The complaint pleads facts about Braxton, Trainier, and Burgess, but what evidence is there that Marshky knew the political affiliations of your clients? We took a deposition of Burgess, a former trustee. And after the board meeting, he had to discuss the termination of one of my clients, but was assured that the other client was not going to be fired. The person he appointed, Jackie Trainier, as administrator of the village, took over and participated in the firing of my employees. By plaintiffs. And Burgess said that he saw Trainier arguing with my client, Lynn Woodward, a Jewish woman. And he said, well, we're going to have you reserve the remainder of your time for rebuttal, and we're now going to hear for argument on behalf of the appellee, Ms. Anderson. Thank you. Good morning, Your Honors.  May it please the Court, my name is Karen Anderson, and I represent Defendant DuPage Township. It's actually not the DuPage Township at all, because the other parties were dismissed in the motion to dismiss stage, so only the Township remained on appeal. However, the District Court properly granted summary judgment to defendant on all of plaintiff's claims, especially plaintiff's First Amendment political retaliation claim. Plaintiffs failed to establish an essential element of their claim, namely causation. The first two elements of their prima facie case, the fact that they engaged in First Amendment activity and that they suffered a deprivation likely to deter future First Amendment activity, were conceded by defendant. The only element that was at issue throughout this case was causation. Plaintiffs needed to show that their First Amendment activity was at least a motivating factor. Defendants never claimed they needed to establish the but-for factor. But plaintiffs could not show that their firings were motivated by their protected conduct, because first, defendant was not aware of their conduct. Plaintiffs repeatedly state that in their briefs and elsewhere that they had ample evidence or that they assumed Marshke knew their political affiliation or that Marshke saw plaintiffs campaigning for other candidates. But they never provided a citation to the record in anyone's deposition testimony of that statement. And they never pointed to any other evidence in the record to support that claim. Was it common knowledge that the plaintiffs worked for a Republican? It is common knowledge that the township had been led the Republican administration for 20-some years. So everybody worked for a Republican administration. It's not common knowledge that they were necessarily Republicans or who they voted for. Is that enough to show a motivating factor on the first step? On the first step for the motivating factor, I don't believe so. But even if we did, at each step of the way, plaintiffs failed to provide any evidence, any citation to the record. And so the case relied on one assumption after the next. Plaintiff's assumptions being that there was this motivating factor and the court's assumptions that even if they could show that defendants were aware of the conduct, they still couldn't meet all of the essential elements of their claim. It's insufficient to argue that a defendant could have or even should have known, which is what plaintiffs had argued. The defendant must have actual knowledge. A decision-maker can't retaliate against an individual for engaging in protected conduct if they're not aware of the conduct. And on the contrary, Marshke and all of the trustees testified, all of them testified. They had no knowledge of plaintiff's political affiliation and no knowledge of who plaintiffs supported in the election. More importantly, both of the plaintiffs, Fox and Woodard, testified that they did not talk to Marshke or the trustees about their political affiliation or involvement with the Republican Party. They did not see Marshke or the trustees while they were campaigning or attending political fundraisers. In fact, Marshke said he didn't go out because it was COVID, so he didn't attend any political fundraisers. And finally, Fox and Woodard both testified that they were never asked by Marshke or the trustees to make a contribution or support the campaign in any way. It's not enough to show only that the plaintiffs were of a different political persuasion than the decision-makers. Regarding the suspicious timing, again, the court said even if the plaintiffs could show, the district court, I'm sorry, that Marshke and the trustees were aware of plaintiff's protected conduct, plaintiff's causation argument still fails because it rests on the close temporal proximity argument between Marshke taking office and the plaintiff's termination the next day. And as this court has repeatedly stated, suspicious timing alone is rarely enough to create a tribal issue. Plaintiffs failed once again to cite to any evidence in the record to support their argument. Instead, they just simply reiterate that the terminations occurred close on the heels of their protected conduct because their positions were eliminated the day after the new administration took office. However, that conveniently ignores the undisputed evidence, the abundance of undisputed evidence that Marshke had decided three years earlier in 2018 that he was going to form a slate, run for township office so he could make changes to the township. And it was no secret that some of those changes were going to be made to the food pantry and the senior center. And again, Woodard, one of the plaintiffs, testified that Marshke suddenly began attending monthly board meetings back in 2018 when Supervisor Bill Mayer was in office and that Marshke had been very vocal at those meetings about wanting to make changes to the food pantry and the senior center. Marshke became a member of the senior center where Fox and Woodard were both directors. And in his experience, if an issue arose at the senior center, Fox would say it was Woodard's responsibility, Woodard would say it was Fox's responsibility. So Marshke even complained to the township supervisor about the lack of leadership at the center and nothing was done. It was these experiences that encouraged Marshke to run for office so he could make changes. Again, if we make another assumption about plaintiffs meeting their burden and having established their prima facie case of political retaliation, their claim would still fail because defendants successfully rebutted any causal inference that might have existed. The genesis for Marshke running to run for township office was his concern that the township was being mismanaged and that the senior center lacked defined leadership. Marshke and his slate of candidates discussed these things before they were ever elected. The group believed that the current administration was spending wastefully, awarding contracts to businesses owned by political supporters, and was inefficient due to the infighting among board members. This last concern played out at the Republican caucus when the Republican Party did not vote to support the incumbent Republican supervisor, Felix George, forcing him to run as an independent in the 2021 election. Linda Youngs, who had served as the administrator to the supervisor Bill Mayer, who was Republican, and then supervisor Felix George, also Republican, was responsible for overseeing the administrative offices, the food pantry, facilities and maintenance, and the senior center. Marshke and his group thought that this was too much responsibility for one individual and that's why things at the senior center were being ignored, put on the back burner. Youngs also had her office in the administration building, which is a separate building from the senior center, which left the senior center basically unsupervised. The crux of this reorganization plan was to create two equal positions, one to oversee the administration building and one to oversee the senior center. And to ensure that these positions had the same stature, each position was to report directly to the supervisor and be responsible for their respective building and receive the same pay. And the two positions did not have to report to one another. Once again, without any authority or support to the record, plaintiffs assert that reorganizing could mean politics. But again, it's well settled that speculation may not be used to manufacture a genuine issue of fact. As soon as Marshke and his slate won the election, they hit the ground running. They prepared the organizational chart, which showed the two co-equal positions. Youngs was to become the Levy Center director. Jackie Trenier was going to take over as the township administrator. At the first meeting of the newly elected board, the board voted to appoint a township attorney, to hire Trenier as administrator, and to adopt the organizational chart. The next day, Fox and Woodard were informed that their positions had been eliminated and they were being let go. Under the township code, the supervisor is the CEO of the township. The trustees believe that as CEO, Marshke had the authority to hire and fire without the board's involvement. It was Marshke who believed, or who wanted, he believed he needed the board to vote on hiring and firing. So he had the board vote to confirm the appointment of the township attorney and hire Trenier at its meeting and ultimately adopt the resolution to reorganize the township. Plaintiffs claim, as they did here, that the reorganization was a scam to get rid of them because Marshke did not seek the board's approval before terminating them. There seems to be confusion about this. Marshke did not terminate them as a disciplinary measure. And even, as I mentioned, if there had been a disciplinary measure, the trustees believe that Marshke could have terminated them on his own. But that wasn't the case. It was a reorganization, and the board had the statutory authority to vote on resolutions, and it did so when it voted to reorganize. The reorganization eliminated the redundant director positions that Fox and Woodard had previously had. And plaintiffs might have thought this was unfair or unwise, but as we know, courts do not sit as a super personnel department second-guessing an employer's decision. Finally, the board's treatment of other Republicans, while it's not dispositive, it is circumstantial evidence of how defendants behave towards others in the protected group. And there are many Republicans who remained employed, including plaintiffs' family members, Woodard's family members, and Linda Youngs, who arguably was put into a better position after the reorganization because she kept her same pay but had fewer job responsibilities. Thank you, Ms. Anderson. Thank you. Mr. Johnson, we're going to go back to you now for rebuttal argument. Mr. Johnson, one thing we have to point out to you, in your blue brief, you don't include the decision and order that you're appealing from. It's referenced in the appendix, and there's a certification that it's there, but the district court's decision's not included. In any future filings, please make sure to include that order from the district court. Okay? Yes, I will. I thought that as part of the filing of the appeal, I submitted the copy of the order. We found it. It's just got to be included in the appeal, the appellate brief, according to the certification. Okay. Yeah, I'm apologizing for that. But I sat in the deposition of Mr. Marski and convinced he had signed it. I was convinced he was switching. He was lying. He never admitted anything. He did wrong, and he wouldn't admit it. Jackie Treanor ran against people Mike Hines supported for mayor. She was—lo and behold, she lost, and he appointed her super—subministrator for the township and had a salary close to $100,000. She also was a—she is a board member of the Will County Board. But anyway, she's got two positions that were politically rewarded to her.  Thank you, Mr. Johnson. Thank you very much for your appearance and for your oral argument today. Just one second. Yes. If I could. One final point. Mike C. has passed away. At trial, I'm sure we could break him down, and the same for Jackie Treanor. But she has been terminated from the township and charged with fraud. Okay? I would like to have both of them avail to testify at a trial, and we would see what the jury would believe. And I'm asking you to believe me. Thank you much. Thank you, Mr. Johnson. Thank you, Ms. Anderson. The case will be taken under advisement.